# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17-00048-CR-W-BCW |
| ) | |
| ) | |
| CLARENCE BROOKS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

On August 8, 2017, the Grand Jury returned a three-count superseding indictment charging defendant Clarence Brooks with being a felon in possession of a firearm, possessing with intent to distribute five grams or more of methamphetamine, and knowingly carrying and using a firearm during and in relation to a drug trafficking crime. (Doc. 29). Defendant filed a motion to suppress physical evidence and his statements based on the Fourth and Fifth Amendments. (Doc. 45). The motion is fully briefed and ready to rule. (Docs. 45, 47, 52, 55).

## Evidence

The evidence includes the Kansas City, Missouri Police Department ("KCPD") dash cam videos of the traffic stop (Doc. 45-1; Gvt. Exh. 1 (5829@2017023201151); Gvt. Exh. 2 (5788@20170203201200)), KCPD investigative reports (Doc. 45-2)[1], and the Joint Set of Stipulated Facts for Suppression Hearing (Doc. 54). The parties offered no witnesses, given the stipulated facts. Upon review, the Court adopts the Joint Set of Stipulated Facts as set forth below, and makes additional fact findings based on the evidence presented by the parties:

1. On February 3, 2017, at approximately 8:15 p.m., in Kansas City, Missouri, KCPD Officers Payne and Solomon were on routine patrol in the area of 18th Street and Prospect Avenue, Kansas City, in the Western District of Missouri. (Docs. 45-2, 54).

---

[1] The parties stipulated to the Court's use of the investigative reports during a conference with the Court. (Doc. 57 at p. 2).

2. While on patrol, the license plate reader in the officers' patrol vehicle indicated that they had just passed by a possible stolen vehicle. (Docs. 54, 45-2).

3. The officers performed a U-turn, located the possible stolen vehicle, and confirmed with KCPD dispatch that the vehicle was, in fact, reported stolen; the information regarding the stolen vehicle matched that of the green Honda Civic, license plate number of DK1D4J, the officers were following. (Docs. 54, 45-2).

4. The officers followed the vehicle for several minutes, turned on their patrol vehicle's emergency lights, and pulled over the vehicle near the entrance to the I-70 westbound ramp from Prospect Avenue. (Docs. 54, 45-2).

5. The officers conducted a "felony car check" with their guns drawn and attempted to remove the vehicle's occupants by verbal commands, at times through the use of a public address system ("PA").

6. Review of the audio and video recordings taken form the KCPD vehicle that initiated the stop reveals the following series of events:

   8:17:01 p.m.   Traffic stop begins.

   8:17:10 p.m.   (Officer 2) "Alright it's your show."[2]

   8:17:16 p.m.   (Officer 1) "Driver let me see your hands. Let me see your hands." (Both individuals in the green Honda appear to put their hands up).

   8:17:20 p.m.   (Officer 1) "Turn the vehicle off. Driver turn the vehicle off."

   8:17:37 p.m.   (Officer 1) "Driver throw the keys out the windows. Driver throw the keys out the window. Throw the keys out of the window." (Driver does not comply).

   8:18:02 p.m.   (Officer 3 in a KCPD backup vehicle) "Don't have keys bud."
   (Officer 4, possibly a Sergeant in KCPD backup vehicle) "(inaudible) the PA work?"
   (Officer 2) "No sir. Maybe it does (inaudible) check."

   8:18:07 p.m.   (Officer 2) (with PA) "Driver throw the keys out the window slowly."

---

[2] The Court notes that during this traffic stop Officer 1, Officer Solomon, appears to be a less experienced officer in training with Officer 2, Officer Payne, a more experienced officer.

2

|            |                                                                                                                                                                                                                                  |
|------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | (Officer 2) (speaking to Officer 1) "Update her" (possibly referring to radio dispatch; Officer 2 then appears to say to the other KCPD officers on the scene) "Let him do it."                                                    |
| 8:18:35 p.m. | (Officer 2) (speaking to Officer 1) "Alright, they're being cooperative Solomon. Proceed with the commands. Get the driver out first."                                                                                             |
| 8:18:36 p.m. | (Officer 1) "Driver, with your left hand, slowly open the door. Driver, slowly open your door." (Driver fails to comply).                                                                                                          |
| 8:18:59 p.m. | (Officer 2) "Hey Solomon I'm handing you the PA. Take this it is working."                                                                                                                                                         |
| 8:19:00 p.m. | (Officer 1) (PA) "Driver, slowly open the door." (Repeated). (Driver fails to comply). (Passenger starts to get out of the car).                                                                                                   |
| 8:19:22 p.m. | (Officer 3) "Driver slowly open the door."                                                                                                                                                                                         |
| 8:19:22 p.m. | (Officer 1) "Driver open the door."                                                                                                                                                                                                |
| 8:19:25 p.m. | (Officer 2) "Let's ditch the PA Solomon. Forget the PA."                                                                                                                                                                           |
| 8:19:30 p.m. | (Officer 3) "Passenger stay in the car. Your hands up. Hands up."                                                                                                                                                                  |
| 8:19:36 p.m. | (Officer 1) "Driver get out."                                                                                                                                                                                                      |
| 8:19:36 p.m. | (Officer 2) "Keep talking to him Solomon. Keep talking to him."                                                                                                                                                                    |
| 8:19:38 p.m. | (Officer 1) "Get out with your hands up. Driver, driver only, get out with your hands up."                                                                                                                                         |
| 8:19:49 p.m. | (Officer 2) "This is a great learning experience, I am not mad at all."                                                                                                                                                            |
| 8:19:52 p.m. | (Officer 1) "Driver get out of the car with your hands up." (Driver does not comply).                                                                                                                                              |
| 8:19:52 p.m. | (Officer 2) "Solomon now you cover me."                                                                                                                                                                                            |
| 8:19:57 p.m. | (Officer 2) "Passenger keep your hands in plain view. Step out of the car slowly. Step out. Nice and slow. Close your                                                                                                              |

3

| | |
|---|---|
| | door. Face away from us. Walk backwards to the sound of my voice. Move, Move, Move, Move. Stop." |
| 8:20:13 p.m. | (Officer 2) "Take one step to your right. Move. Drop down to your left knee. Stop. Drop down to your left knee. Prone all the way out onto your stomach." <br> (Unknown officer on scene) "Hands up driver. Hands up driver." (In response to movement by the driver). |
| 8:20:30 p.m. | (Driver closes his door and drives off in the vehicle onto I-70.) |
| 8:20:31 p.m. | (Officer 2) "Put your hands behind your head." (Still directing the passenger's motions). <br> "That's fine. We're on him now." (Stated to Officer 1 in response to driver taking off in the vehicle). |
| 8:20:38 p.m. | (Officer 2) "Just put your hands behind your back man." (Again talking to the passenger). |
| 8:20:42 p.m. | (Passenger) "(Inaudible) What the f* (inaudible)". |
| 8:20:59 p.m. | (Officer 2) "Hey buddy." (Speaking to the passenger). "Negative we let the car go but we do have the passenger." (On his radio with police dispatch). |
| 8:21:08 p.m. | (At this point Officers 1 and 2 are going out of camera view, but the camera from a backup KCPD officer's vehicle's captures the next minutes as the passenger is detained and the gun removed from his person). |

(Gvt. Exh. 1).

7. The audio and video recordings taken from the backup KCPD vehicle captured the next series of events:

| | |
|---|---|
| 8:20:52 p.m. | (Female Officer is seen handcuffing the passenger while passenger continues to speak/yell unintelligibly). |
| 8:21:08 p.m. | (Officer 2) "Hold on. Relax. We'll explain it all in a minute. Ok. You be cool with us, we'll be cool with you." |
| 8:21:21p.m. | (Officer 2) "Alright, alright. You want to get him up and (inaudible)." |
| 8:21:23 p.m. | (Female Officer) (inaudible). |

4

| | |
|---|---|
| 8:21:24 p.m. | (Officer 2) "That's fine." (Female officer rolls passenger on his side). |
| 8:21:25 p.m. | (Officer 2) "Rollover man. You got any guns or weapons on you. Anything that's going to hurt us?" |
| 8:21:30 p.m. | (Passenger) "I got my gun on me."<br>(Officer 2) "Okay. Where's the gun at?"<br>(Passenger) "In my pocket right here (inaudible)." |
| 8:21:35 p.m. | (Officer 4) "Hey guys, let's get him up and curbside." |
| 8:21:37 p.m. | (Female Officer) "Well he's got a gun we are getting that off him first."<br>(Officer 4) "Ok."<br>(Officer 2) "Where is it?"<br>(Female Officer) "It's in here. I can feel it."<br>(Officer 2) "Alright bud be cool." |
| 8:21:46 p.m. | (Female Officer) (After removing the gun from Defendant's pocket.) "We're going to get you up, ok." (Officers help the passenger up off the ground and he is walked toward the patrol vehicle and he becomes out of view of the camera). |
| 8:21:53 p.m. | (Officer 2) (While trying to clear the gun found on the passenger and speaking with another officer.) "There is one stuck in the pipe. I'm trying to get it out. If you got a knife and a light I'll take it." (responding to offer from unknown officer off camera). |
| 8:22:54 p.m. | (Officer 2) "It's stuck in there. There we go. (Gun is cleared.) Thanks Sarge. Perfect. Clear. Thank you sir." |
| 8:23:21 p.m. | (Officer 2) "Your extractor was holding it but it had a full magazine and this one was in the pipe. It's an (inaudible) S380." |
| 8:23:33 p.m. | (Unknown officer off camera) "Did he say he was a felon?"<br>(Officer 2) "No, no he did not. He just said he had a gun. So we'll have to figure that out." |
| 8:23:37 p.m. | (Officer 2) "Montgomery asked him. The gun is there. What do you need from me bud?"<br>(Unknown officer off camera) "Oh I think we are probably ok for now. Ok. (inaudible) piece together and then we'll be on our way. (Inaudible)." |

5

| | | |
|---|---|---|
| 8:23:58 p.m. | (Officer 2) "No, no need to do that, I get it, the first time there is a lot." (Inaudible). | |
| 8:24:56 p.m. | (Officer 2) "Is that what I think it is?" (off-camera officer says "uh-huh"). | |
| 8:24:57 p.m. | (Unknown officer off camera) "Do you have his info?" | |
| 8:25:02 p.m. | (Unknown officer off camera) "You can talk to him while Officer Stuart is searching him." | |
| 8:25:05 p.m. | (Officer 2) "What do you need from me bud? You good?" (Unknown officer off camera) "I'm good. I appreciate it." (Officer 2) "Ma'am, ma'am. (inaudible). Sarge do you need anything from me?" | |
| 8:25:19 p.m. | (Unknown officer off camera) "No. Thanks, appreciate it." | |
| 8:25:21 p.m. | (Officer 2) "Yes sir." | |

(Gvt. Exh. 2).

8. The passenger in the stolen vehicle was later identified as Defendant Clarence Brooks. (Docs. 54, 45-2).

9. The gun removed from Defendant's jacket pocket was a Jimenez Arms, .380 caliber pistol, bearing serial number 133132, loaded with five rounds of live ammunition. (Docs. 54, 45-2).

10. While Defendant was being searched incident to arrest, the officer discovered a clear plastic baggie containing a white crystal substance in the left pocket of his jacket. The officer also discovered a clear glass pipe with residue in the inner pocket of Defendant's jacket. The white crystal substance in the plastic baggie weighed approximately 29.07 grams and tested positive for the presence of methamphetamine. (Doc. 45-2).

11. The Illegal Firearms Squad conducted a criminal history check on Defendant and learned that he had a prior felony conviction. Defendant was transported and booked into jail for possessing a controlled substance and for being a felon in possession of a firearm. (Doc. 45-2).

6

## Discussion

Defendant argues (1) he was unlawfully detained and searched in violation of his Fourth Amendment rights and (2) that his Miranda rights were violated when officers asked him whether he had a weapon. Defendant asks the Court to suppress the firearm, methamphetamine and glass pipe found in his jacket, and any incriminating statements he may have made while detained by the police.

## Legal Analysis

### I. Initial Detention

The crux of Defendant's arguments appears to be the timing of Defendant's arrest and the controlling legal standard. (See Doc. 54 at p. 2 n.2). Defendant argues he was arrested immediately upon exiting the car. (Doc. No. 57 at p. 3). The Government argues Defendant was arrested after the firearm was retrieved from his pocket. (Doc. No. 57 at p. 4). Importantly, however, both of these events occurred before the methamphetamine and glass pipe were recovered from Defendant's jacket. Sequential examination of the events preceding the search of Defendant's person reveals that law enforcement's actions were lawful under both a reasonable suspicion and probable cause analysis.

#### A. Reasonable Suspicion

Defendant argues law enforcement lacked reasonable suspicion to detain him as a passenger in a stolen vehicle, and therefore his detention was unlawful. Defendant further argues that even if his detention were lawful, there was no reason for the officers to believe he was armed and dangerous and, therefore, there was no basis for the officers to conduct a frisk of his outer clothing for weapons. The Government maintains that the officers had information that the vehicle was stolen, which justified the investigatory stop; and that the officers could reasonably believe that that individuals in a stolen vehicle may be armed, which justified Defendant's frisk for weapons.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that a "stop and frisk" may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures if two conditions are met. An investigatory stop is lawful if (1) it is based on a reasonable belief by a police officer that the person being detained is committing or has committed a crime and (2) the officer reasonably suspects that the person may be armed and dangerous. The Supreme Court has specifically held in a traffic-stop setting that when the first

7

condition of reasonable suspicion of a crime is met, police may lawfully detain an automobile and its occupants pending inquiry. Arizona v. Johnson, 555 U.S. 323, 326 (2009). For the duration of the traffic stop, "'everyone in the vehicle,' the driver and all passengers," are seized. Id. at 327 (citing Brendlin v. California, 551 U.S. 249, 255 (2007)). The occupants may be handcuffed during the stop to ensure officer safety and maintain the status quo while the investigation is being conducted. United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006).

Here, the officers had information that the vehicle was stolen. The license plate reader in the officers' patrol vehicle indicated, and KCPD dispatch confirmed, that a green Honda Civic, Missouri license plate DK1D4J, had been reported stolen. These facts would give an objectively reasonable police officer reason to believe that the driver and other occupants of the vehicle may have been in the process of committing or had already committed the crime of stealing a car. The officers' seizure of the green Honda Civic and its occupants was thus lawful under Terry.

With regard to the second condition, an officer must be positioned to act instantly on reasonable suspicion that the persons temporarily detained are armed and dangerous. Id. Traffic stops are "especially fraught with danger to police." Id. The Supreme Court has stressed that "[t]he risk of harm to both the police and occupants of a stopped vehicle is minimized … if the officers routinely exercise unquestioned command of the situation." "The same weighty interest in officer safety … is present regardless of whether the occupant of the stopped car is a driver or a passenger." Id. at 331 (citing Maryland v. Wilson, 519 U.S. 408, 415 (1997)(holding that the passenger once outside the stopped vehicle may be patted down for weapons if the officer reasonably concludes that the passenger might be armed and presently dangerous). The Supreme Court has further acknowledged that the risk of a violent encounter in a traffic-stop setting stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from a fact that evidence of a more serious crime might be uncovered during the stop. Id. The motivation of a passenger to employ violence for such a crime is every bit as great as that of the driver; the additional intrusion on the passenger is minimal. Id. Moreover, the Eighth Circuit has held that when law enforcement officers encounter suspected car thieves, they may reasonably suspect the individuals might possess weapons. United States v. Rowland, 341 F.3d 774, 784 (8th Cir. 2003)(citing United States v. Shranklen, 315 F.3d 959, 963 (8th Cir. 2003))(involving driver and passenger).

8

Case 4:17-cr-00048-BCW   Document 74   Filed 11/30/18   Page 8 of 14

In this case, the officers confirmed information that the vehicle was stolen, a felony. When the vehicle stopped, officers were confronted with an uncooperative driver who repeatedly ignored their commands. After Defendant ultimately complied with the officers' directives to exit the vehicle, the driver sped off in the stolen vehicle. Adding to this confusion, Defendant immediately commenced yelling and cursing at the officers. The totality of these circumstances certainly justified the officers' concern that Defendant may have been armed and dangerous.

Additionally, Defendant told officers before he was patted down for weapons that he had a gun in his pocket. This admission, alone or coupled with the officers' reasonable concern that Defendant may have been armed and dangerous, provided sufficient grounds for the officers conduct a pat down of Defendant's outer clothing for weapons. Although Defendant contends police violated his Miranda rights by asking him if he had "any guns or weapons . . . or anything that is going to hurt us," the Court disagrees.

Miranda warnings are required when an individual undergoes a custodial interrogation. The Supreme Court has held that Miranda warnings can be required in a Terry stop if the individual was subjected to restraint associated with a formal arrest. See Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984); Martinez, 462 F.3d at 908. Factors relevant to the determination of custody include whether (1) the suspect was informed that questioning was voluntary and that he or she was free to leave, (2) the suspect was restrained, (3) the suspect initiated contact with authorities or responded to official requests, (4) strong arm tactics were employed, (5) the atmosphere was police dominated, and (6) the suspect was placed under arrest at the termination of the questioning. United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). Analysis of these factors in the present case indicate Defendant was in custody, as officers had their guns drawn, Defendant was handcuffed, lying face downward, was not free to leave, and was ultimately arrested.

However, the lack of Miranda warnings does not make law enforcement's question to Defendant unlawful. In New York v. Quarles, 467 U.S. 649, 655 (1984) the Supreme Court held that "there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." This public safety exception "includes protection of the police officers themselves." United States v. Liddell, 517 F.3d 1007, 1009 (8th Cir. 2008)(citing Quarles, 467 U.S. at 658 n.7, 659); United States v. Williams, 181

9

F.3d 945, 953–54 (8th Cir. 1999))(public safety exception allowed officers to ask if there was anything that would hurt them); United States v. Arzola, No. 16-00290-01-CR-W-DGK, 2017 WL 4837198, at *5 (W.D. Mo. Sept. 1, 2017)(public safety exception allowed officer to ask if there was anything that was going to "poke, prod or hurt him"); United States v. Randolph, No. 14-00204-01-CR-W-BP, 2015 WL 6775928, at *4 (W.D. Mo. Nov. 5, 2015)(public safety exception allowed officer to ask if suspect had any weapons or anything that was going to hurt the officer). "The exception does not depend upon the subjective motivation of the questioning officers." Liddell, 517 F.3d at 1009 (citing Quarles, 467 U.S. at 656). Instead, an objective standard applies in determining when a police officer's pre-Miranda questions are reasonably prompted by a concern for the public safety. Id. The exception does not apply to "questions designed solely to elicit testimonial evidence from a suspect." Id. (quoting Quarles, 467 U.S. at 659).

Here, the facts show that law enforcement's question whether Defendant had any "guns or weapons" or "anything that would hurt [them]" was prompted by concern for officer safety. Viewing the totality of circumstances at the point the question was posed, officers had reasonable concern that Defendant might have a weapon or other dangerous item on his person - the confirmed stolen vehicle requiring felony car check procedures by the police; the failure of the driver to respond to repeated police commands to turn off the engine, toss the keys out the window, and exit the vehicle; the driver's flight from the scene as Defendant lay face down on in the middle of the street being restrained; and Defendant's loud and arguably abusive language as the officers were attempting to restrain him. The scene at that moment was both fluid and potentially very dangerous for the police. Defendant's Miranda rights were not violated by this question.

### B. Probable Cause

Defendant also argues law enforcement lacked probable cause to arrest him in connection with the stolen vehicle, and therefore violated his Fourth Amendment rights by taking him into custody and seizing the firearm from his jacket. The Government responds that the officers had probable cause to arrest Defendant for Tampering in the Second Degree.

"A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime." United States v. Winarske, 715 F.3d 1063, 1066 (8th Cir. 2013)(citing Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "To

determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003).

Here, the officers had information that the vehicle in which Defendant was the front-seat passenger had been reported stolen. Missouri law states that Tampering in the Second Degree is committed when a person "unlawfully rides in or upon another's automobile." V.A.M.S. § 569.090.1(2). Defendant was riding in a vehicle that was confirmed as stolen; thus, the officers had probable cause to (1) believe that Defendant was committing or had committed the crime of Tampering in the Second Degree, (2) to arrest him for that crime, and (3) to conduct an investigation into the stolen vehicle in which he was riding.

Defendant's argument that the officers lacked probable cause because they did not know whether Defendant was aware the vehicle was stolen when they arrested him is without merit. "Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." Winarske, 715 F.3d at 1067 (citing United States v. Webster, 625 F.3d 439, 442 (8th Cir. 2010)). "Instead, the mere probability or substantial chance of criminal activity, rather an actual showing of criminal activity is all that is required." Id. (citing United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005)). Moreover, "[i]n making a probable cause determination law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." Id. (citing United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010)).

Defendant next argues that the Court should follow the precedent of the Ninth Circuit's decision in Rohde v. City of Roseburg, 137 F.3d 1142 (9th Cir. 1998). This argument is unpersuasive for two reasons.

First, there is no precedent in the Eighth Circuit or Missouri state law that supports the Ninth Circuit's analysis in Rohde. The issue in Rohde was whether the passenger in a stolen vehicle could be arrested under the same statute as the driver - Oregon's unauthorized use of a motor vehicle statute. The Oregon statute provided that "[a] person commits the crime of unauthorized use of a vehicle when: (a) The person takes, operates, exercises control over, *rides in or otherwise uses* another's vehicle…without consent of the owner[.]" Or. Rev. Stat.

11

164.135(1) (emphasis added).  Although the statute on its face appears to apply to both drivers and passengers of stolen vehicles, the Ninth Circuit reasoned that the police only had probable cause to arrest the driver of a stolen vehicle under the Oregon statute, not the passenger, because there was no evidence of a relationship more substantial than that of a driver and passenger.  In the Ninth Circuit's discussion of why the Oregon statute did not apply to the passenger of the stolen vehicle, the Court gave no indication that the passenger's arrest could have been considered under any other Oregon statute besides the unauthorized use statute.  This contrasts with Missouri law where there are two separate provisions, one for a driver and one for a passenger.  See State of Mo. v. Davidson, 521 S.W.3d 637, 643-648, 649 n.4 (Mo. App. 2017) (overturning conviction for Tampering in the First Degree where officer did not see the defendant driving the stolen vehicle, and the evidence showed that rather than being the driver, defendant was a passenger in the stolen vehicle.)

Under Missouri's First Degree Tampering Statute, "[a] person commits the offense of tampering in the first degree if he or she … (2) [k]nowingly receives, possesses, sells, or unlawfully operates an automobile, … without the consent of the owner thereof." V.A.M.S. § 569.080.1(2).  Had Defendant been the driver of the stolen vehicle in this case, the officers would have had probable cause to arrest him for First Degree Tampering.  See McIntyre v. Caspari, 35 F.3d 338, 342 (8th Cir. 1994) (Missouri law charging First Degree Tampering is a lesser included offense for a driver charged with stealing a car).  But, because Defendant was the passenger in the stolen vehicle, the government asserts that the officers had probable cause to arrest him for Tampering in the Second Degree.  Tampering in the Second Degree is a misdemeanor, and provides that a crime is committed when a person "unlawfully rides in or upon another's automobile." V.A.M.S. § 569.090.1(2).  The difference between the laws applicable to occupants in stolen vehicles in Oregon and Missouri renders the Ninth Circuit's Rohde decision inapposite here.  Moreover, the Ninth Circuit's decision in Rohde failed to cite to any statute or case law in support of the finding that the officers lacked probable cause to arrest a passenger in a stolen vehicle.  Id. at 1144-45.  The Court declines to extend the reasoning of Rohde here.

## II. Discovery of Drugs and Drug Paraphernalia

As demonstrated above, law enforcement's actions through the seizure of the firearm from Defendant's jacket were supported by both reasonable suspicion and probable cause.  At

12

this point the parties agree, and the record supports, that Defendant was under arrest for investigation of the stolen vehicle. Following a lawful custodial arrest, a search of the arrestee's person incident to arrest does not require additional justification. United States v. Robinson, 414 U.S. 218, 235 (1973). The subsequent search and recovery of drugs and drugs paraphernalia from Defendant's jacket thus did not violate the Fourth Amendment.

## III. Inevitable Discovery

Even if the Court were to find that probable cause did not exist to arrest Defendant for Second Degree Tampering, the methamphetamine and glass pipe would still be admissible under the inevitable discovery doctrine. The "inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016). Evidence need not be suppressed where the "two prongs of the inevitable discovery doctrine are proved by a preponderance of the evidence: (1) there is a reasonable probability the evidence would have been discovered by lawful means, in the absence of police misconduct, and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Munoz, 590 F.3d 916, 923 (8th Cir. 2010).

In this case, both prongs are satisfied. The officers were actively investigating Defendant in connection with the stolen vehicle. As discussed above, reasonable suspicion existed for law enforcement to detain Defendant and frisk him for weapons. Upon locating the firearm, Officer Payne stated they would need to determine whether Defendant was a felon. (Gvt. Exh. 2 at 8:23:33 p.m.). The resulting criminal history check revealed Defendant had a prior felony conviction. The Court finds there is a reasonable probability that Defendant would have been arrested for being a felon in possession. Once arrested, Defendant would have been searched incident to that lawful arrest, and the methamphetamine and glass pipe would have been discovered. See United States v. Brown, 217 F.3d 605, 607 (8th Cir. 2000); United States v. Glenn, 152 F.3d 1047, 1050 (8th Cir. 1998).

## Conclusion

For the reasons more fully stated above, it is

RECOMMENDED that Defendant's Motion to Suppress Physical Evidence and Statements be denied.

The parties have fourteen days from the date of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 30 day of November, 2018, at Kansas City, Missouri.

*/s/ Robert E. Larsen*  .
ROBERT E. LARSEN
United States Magistrate Judge